UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60302-CR-MOORE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GUERBY JOSEPH,

    Defendant.

## **REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on the Second Superseding Petition for Offender Under Supervision (ECF No. 54) which was referred to United States Magistrate Judge Lurana S. Snow, for evidentiary hearing, pursuant to Fed. R. Crim. P. 32.1(b)(2). Defendant, Guerby Joseph initially was charged with two counts of dispensing oxycodone, and on December 10, 2018, he was sentenced to five years probation on each count. The Second Superseding Petition alleges nine violations of probation, occurring on February 19, March 13 and April 21, 2020. An evidentiary hearing was conducted by video conference on May 22 and May 28, 2020.

### I. **FACTS PRESENTED**

#### A. **February 19, 2020**

The Second Superseding Petition alleges that on this date, the Defendant failed to refrain from violation of the law by committing the offenses of fleeing and eluding law enforcement, in violation of Fla. Stat. § 316.1935(1); driving with a suspended license, in violation of Fla. Stat. § 322.34(2), and trespass after warning, in violation of Fla. Stat. § 810.08 (Violations 1-3).

Seminole Police Officer John Butler testified that on February 19, 2020, while on duty, he received a report of suspicious activity involving a bank card being used at the Seminole Casino in Hollywood, Florida. At approximately 4:30 a.m. on that date, a 24-hour no trespass order was issued to the Defendant. A security supervisor walked the Defendant off the casino property through the main entrance. Officer Butler described the Defendant as appearing disheveled and upset. The Defendant stated that he had no car and was waiting for someone to pick him up.

Officer Butler's next contact with the Defendant was 1-2 hours later. At that time, the Defendant was inside a silver Mercedes Benz located in one of the casino garages. The Defendant had walked to a nearby McDonald's restaurant, where he secured a ride to the garage. Officer Butler followed immediately behind the Defendant as he drove out of the garage, and attempted to conduct a traffic stop of Defendant's vehicle. The officer, who was driving a marked police car, initially activated only his flashing lights. When the Defendant did not stop, he activated his siren. The Defendant continued driving, even after stopping at a traffic light, despite the fact that there were numerous locations at which the Defendant could have pulled over safely. The Defendant did not stop until Officer Butler's partner pulled his squad car in front of the Defendant, effectively blocking his progress.

At the time of the stop, the Defendant was upset, yelling that he had not stopped because he had to pick up his kids in Margate and take them to school. The Defendant was alone in the Mercedes and was in possession of its keys. Officer Butler ascertained that the Defendant did not have a valid driver's license and placed the Defendant under arrest. The Government introduced into evidence four aerial photographs of the area where the pursuit took place (Government's Ex. 1-4), as well as Officer Butler's body camera video of his encounter with the Defendant at the time of the stop (Government Ex. 5).

On cross-examination, Officer Butler acknowledged that he had followed the Defendant for a total of 30-40 seconds. He also conceded that the Defendant was not formally charged with fleeing and eluding because the Seminole Police Department was concerned by a possible violation of its chase procedures. The Defendant was charged with trespass and driving with a suspended license.

Regarding the trespass charge, the officer testified that the Defendant had been escorted to the entrance of the casino and instructed to leave the casino premises. Security cameras showed the Defendant walking off the casino property and crossing the street. Thereafter, cameras captured the Defendant entering the parking garage in a black Ford with another individual. The vehicle had come from the McDonald's restaurant located across the street from the casino. There is no evidence that the Defendant re-entered the main casino building.

### B. March 13, 2020

The Second Superseding Petition alleges that on this date, the Defendant violated the conditions of probation by failing to notify the Probation Office of a change in residence; failing to participate in the Location Monitoring Program, and failing to report to the Probation Office as directed (Violations 4-6).

United States Probation Officer Krystal Cunningham testified that she was assigned to supervise the Defendant on November 26, 2019. She had been advised that the Defendant was difficult to supervise because he made himself available only on his own schedule. She stated that it had taken quite awhile for her to see the Defendant at his listed residence, a boarding house operated by his mother. She finally was able to do so during a surprise visit, during which she noticed that the only personal effect of the Defendant at the residence was his wallet. At that time, Officer Cunningham had received reports that the Defendant was living elsewhere.

On a subsequent visit, approximately one week before the Defendant's scheduled court appearance on March 13, 2020, the Defendant was not at the boarding house. Officer Cunningham spoke to several occupants of the boarding house, none of whom knew of the Defendant. The officer then went to the residence of the Defendant's girlfriend, who refused to allow her inside. The Defendant came out of the residence to speak to Officer Cunningham.

At the March 13, 2020 court appearance, United States Magistrate Judge Jared Strauss instructed the Defendant to meet with Officer Cunningham that same day. The Defendant told the officer that he did not have a means of getting to the Probation Office, so she agreed to meet him at the boarding house at 5:00 p.m. The Defendant contacted Officer Cunningham by phone, stating that he was on a train. However, location information from the Defendant's iPhone revealed that he was in Delray Beach and not on a train. The Defendant also returned a call from Officer Cunningham, but their meeting never took place.

Officer Cunningham listened to the recording of the Defendant made by Officer Butler on February 19, 2020, in which he stated that he needed to go home to Margate to pick up his children. On cross-examination, the officer acknowledged that she had no evidence that the Defendant spent any time in Margate.

### C. April 21, 2020

The Second Superseding Petition alleges that on this date, the Defendant committed the offense of possessing a controlled substance without a prescription, in violation of Fla. Stat. § 893.13(6)(A) (Violation 7). The Petition also alleges that the Defendant violated the conditions of probation by unlawfully possessing marijuana and frequenting a location where controlled substances are illegally sold, used or distributed (Violations 8-9).

Palm Beach County Sheriff's Office Deputy Matthew Bundrick testified that on April 21, 2020, he was conducting surveillance of possible drug transactions occurring outside a hotel parking lot in Lake Worth, Florida. He observed several individuals enter the back of a vehicle that was parked in the lot. Each person stayed inside the vehicle for less than five minutes, then exited back into the parking lot. Deputy Bundrick followed the vehicle to a gas station, where he initiated contact with the driver (later identified as the Defendant) and passenger (identified as Mya Taylor). When the car door opened, the deputy noticed smoke and a strong smell of marijuana. Deputy Bundrick also observed the Defendant reach into the area of the back side of the passenger seat. The Defendant admitted to smoking marijuana.

Inside the car, Deputy Bundrick found marijuana residue on the console, as well as three pills on the floor by the back side of the passenger seat and a pill on the floor by the driver's seat. The pills were marked in a manner which indicated they contained acetaminophen and oxycodone, the ingredients of Percocet. The deputy also found a quantity of cash in the door panel of the driver's side door. The Defendant and Ms. Taylor stated that they had come from Broward County.

On cross-examination, Deputy Bundrick testified that at the time of this encounter, there was an outstanding warrant for the Defendant's arrest. He stated that he did not know whether the individuals who had been seen entering the back of the Defendant's car had been smoking marijuana or carrying pills with them. At the time of his encounter with the Defendant, the deputy did not have a dashboard or body camera. Deputy Bundrick learned that the vehicle had been leased by Ms. Taylor.

Homeland Security Investigations (HSI) Agent Carlos Suarez testified that laboratory tests of the pills found in the vehicle revealed that they contained fentanyl rather than acetaminophen and oxycodone, and thus were counterfeit. The agent explained that the production of counterfeit oxycodone pills has become common

as the result of recent limitations on the level of oxycodone which can be prescribed lawfully. The counterfeit pills containing other ingredients such as fentanyl and heroin help fill the demand for the same "high" previously available from prescription pills. Agent Suarez also testified that the Defendant's behavior on April 21, 2020, was similar to that observed in the underlying offense for which he received a probationary sentence.

On cross-examination, Agent Suarez conceded that in the underlying case, only one drug sale by the Defendant had taken place in a hotel parking lot. The other sales had occurred in the parking lot of a pharmacy. The parties stipulated that Ms. Taylor was in possession of a pill bottle with a label purporting to indicate that Percocet had been prescribed for her. A photograph of this bottle was introduced as Defendant's Ex. A. However, the bottle's label did not list the medical provider prescribing the medication. Agent Suarez testified that in the underlying case, the Defendant used pill bottles with the prescription labels removed.

## II. DISCUSSION

### A. February 19, 2020

The Defendant conceded that on February 19, 2020, he was driving with a suspended license (Violation 2). Regarding the offense of fleeing and eluding (Violation 1), the Defendant notes that the pursuit of his vehicle lasted only about 30 seconds, during a portion of which only Officer Butler's lights had been activated. Additionally, the Defendant was not formally charged with this offense. As to the trespass charge, the Defendant points out that he did not return to the casino building, but went to the parking garage. While the garage technically was part of the casino property, the Defendant argues it was reasonable for him to believe that he was complying with the no trespass order by returning to a building that was not the casino itself.

With respect to the charge of fleeing and eluding, the Government responds that the Defendant knew he was being followed by a marked police unit and did not stop until his vehicle was blocked by another squad car. The Government points out that the decision not to formally charge the Defendant with fleeing and eluding had nothing to do with the Defendant's conduct, but related instead to departmental chase procedures. Finally, the Government notes that the fleeing and eluding statute does not have a threshold for the duration of the pursuit.

As to the trespass charge, the Government states that the Defendant left the casino property and sneaked back in after having denied that he had his own car. The garage clearly was part of the casino premises and the Defendant re-entered those premises after departing from them.

The undersigned finds that the Government has proved by a preponderance of the evidence that on February 19, 2020, the Defendant committed Violations 1-3 by failing to stop for a police officer who had engaged lights and sirens of the marked unit he was driving (Violation 1), driving with a suspended license (Violation 2) and re-entering casino premises in violation of a no trespass order (Violation 3).

### B. March 13, 2020

The Defendant contends that he had not changed his residence (Violation 4). When Officer Cunningham conducted a surprise visit to the Defendant's listed residence, the Defendant was on the premises. The fact that the officer did not observe any belongings of the Defendant other than his wallet does not mean that he did not live there. The Defendant notes that there is no evidence that he spent time in Margate. Regarding the Defendant's failure to attend the scheduled meeting on March 13, 2020 (Violations 5-6), he argues that he arrived late (at 7:00 p.m. rather than the scheduled 5:00 p.m.) because he was having transportation problems.

The undersigned finds that the Government proved by a preponderance of the evidence that the Defendant committed Violations 4-6. While the Defendant was present at his listed residence (his mother's boarding house) on one occasion, on another occasion he was found at his girlfriend's residence, and the Defendant told Officer Butler that his home was in Margate. The evidence supports a finding that the Defendant moved around to different locations and failed to permanently reside at the address he had provided to the Probation Office. Therefore, the Defendant failed to notify the Probation Office of a change in residence (Violation 4).

As to the meeting scheduled for March 13, 2020, the Defendant offered no explanation for why he could not arrange for transportation to his mother's boarding house in time for his scheduled 5:00 p.m. meeting. Moreover, when the Defendant told Officer Cunningham that he was on a train, his iPhone location information showed that he was not on a train and was somewhere in Delray Beach. Accordingly, the Government has shown by a preponderance of the evidence that the Defendant failed to abide by his approved schedule (Violation 5) and failed to report to his Probation Officer at the scheduled place and time (Violation 6).

### C. April 21, 2020

Regarding the charges of possessing controlled substances, specifically pills labeled as Percocet and marijuana (Violations 7-8), the Defendant argues that the Government failed to prove that these substances were possessed by the Defendant rather than by the individuals observed entering and leaving his car. As to the charge of frequenting an area where controlled substances are illegally distributed (Violation 9), the Defendant asserts that there is no evidence he knew the hotel parking lot was such a place.

The undersigned finds that the Government has proved by a preponderance of the evidence that the Defendant was engaged in distributing the pills

which were labeled as acetaminophen and oxycodone, but in fact contained fentanyl (Violation 7). Deputy Bundrick observed the Defendant reach into the area behind the passenger's seat, the area in which three of the four pills were found. The fourth pill was found on the floor by the driver's seat, where the Defendant had been seated, and cash was found in a compartment next to the driver's seat. Additionally, Agent Suarez testified that the underlying offense for which the Defendant was placed on probation involved substantially similar conduct. Violation 7 charges the Defendant with the lesser included offense of possessing a controlled substance without a prescription. The pills found inside the Defendant's vehicle were found to contain fentanyl, and there is no suggestion that either the Defendant or Ms. Taylor had a prescription for that substance.

As to the charge of possessing marijuana (Violation 8), Deputy Bundrick testified that as soon as the car door was opened, he observed smoke leaving the car and smelled the odor of marijuana. More importantly, the Defendant admitted that he had been smoking marijuana. Finally, since the Government proved that the Defendant had been engaged in distributing controlled substances in the hotel parking lot, it necessarily follows that the Defendant knew the hotel parking lot was an area where controlled substances are distributed (Violation 9).

Accordingly, the undersigned concludes that the Government has proved each of the 9 alleged violations of probation by a preponderance of the evidence.

### III. **CONCLUSION**

This Court having considered carefully the Second Superseding Petition, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Court find that Defendant, Guerby Joseph committed each of the violations alleged in the Second Superseding Petition.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, Chief United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 3rd day of June, 2020.

                                                  LURANA S. SNOW
                                                  UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Michael Gilfarb (MIA)
AFPD Stewart Abrams (MIA)